IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 21 C 3221 |
| CHRISTOPHER TENTON, T. OLIVER, and UNKNOWN AND UNNAMED CITY OF CHICAGO POLICE OFFICERS | ) ) Judge John J. Tharp, Jr. ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gary Johnson challenges his arrest and detention under 42 U.S.C. § 1983, claiming that the defendant, Detective Christopher Tenton, unlawfully seized him without probable cause in violation of the Fourth Amendment to the U.S. Constitution. On review of the defendant's motion for summary judgment, the Court agrees with Johnson in part, finding that the evidence available to Detective Tenton at the time of Johnson's arrest and initial detention—construed in the light most favorable to the plaintiff—was insufficient to establish either probable cause (an essential element to a § 1983 false-arrest claim) or arguable probable cause (the basis for a defendant officer's qualified-immunity defense). The Court also rejects the defendant's alternative argument for summary judgment—that the prosecutor's charging decision broke the "chain of causation" linking defendant Tenton to Johnson's prosecution such that Tenton is no longer subject to liability. That argument mistakenly conflates an officer's liability for wrongful pre- and post-indictment periods of detention, without acknowledging that a prosecutor's choice to bring charges does not absolve an officer's pre-indictment conduct. In any case, the defendant's chain-of-causation argument rests on case law rendered outdated by the Supreme Court's decision

in *Manuel v. City of Joliet, Illinois*, 580 U.S. 357 (2017), and is therefore inapplicable to Johnson's modern theory of unlawful detention under the Fourth Amendment.

That said, the Court nonetheless concludes that summary judgment is warranted in part. Regardless of any evidentiary gaps that might have plagued Johnson's initial arrest and detention, the return of a lawful indictment gave rise to a rebuttable presumption of probable cause, a presumption that the plaintiff has not overcome through a colorable argument for evidence fabrication or suppression.

The Court therefore issues a split ruling, denying the defendant's motion for summary judgment as to Johnson's initial arrest and pre-indictment period of detention but granting the motion as to Johnson's detention following the return of the indictment.

## BACKGROUND

Shortly after 2:00 p.m. on June 27, 2016, a four-door sedan drove through a residential neighborhood in Chicago's south side. *See* Pl.'s Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶¶ 8, 25, ECF No. 51. The car slowed as it approached a group of four standing on a lawn. *Id.* at ¶ 25; *People v. Turner*, 2022 IL App (1st) 200290-U, ¶¶ 5-6. As it passed, a man leaned out from the rear passenger window, fired a handgun, and fatally injured one of the group's members.

Shelby Turner, a nonparty to this lawsuit, was charged and convicted of murder in connection with the shooting. ECF No. 51 at ¶¶ 53, 57. This case concerns the identity of the driver.

Detective Christopher Tenton responded to the scene. Canvassing the block, he encountered two eyewitnesses who provided a description of the vehicle. Within an hour, law-enforcement officers stopped a car matching the description approximately one mile away. *See* Ex. 1 to Pl.'s Rule 65.1 Statement of Additional Material Facts 6-7, ECF No. 54-1; ECF No. 51 at ¶¶ 15-16, 18. The car was owned by and registered to the plaintiff, Gary Johnson. ECF No. 51 at

2

¶ 18. Inside, officers found Johnson sitting in the driver's seat. ECF No. 51 at ¶ 19. He was accompanied by three passengers: Kwan Johnson, Laquisha Carson, and Shelby Turner. *Id.* Officers arrested all four.

Detective Tenton brought the two eyewitnesses to inspect the car. ECF No. 54-1 at 10. Both confirmed that it was the vehicle in which the shooter had been riding. ECF No. 51 at ¶¶ 21-22. Searching the interior, officers discovered a single spent shell casing on the rear passenger seat where Turner had sat. *Id.* at ¶ 20.

Sometime later, Detective Tenton discovered security-camera footage from a school near where the shooting had occurred. The recording showed a grey four-door sedan pull up next to a group, a man emerge from the window, make a firing motion, and scatter the group as one member fell. None of the occupants of the vehicle were identifiable. ECF No. 54-1 at 11.

Back at the police station, Laquisha Carson indicated that she wished to speak with law enforcement. ECF No. 51 at ¶ 28. Detective Tenton proceeded to conduct a three-hour taped interview.[1] *Id.* at ¶ 29. During the interview, Carson initially denied any involvement in the shooting. She quickly changed course, however, identifying Shelby as the shooter and admitting that she had sat next to him. *Id.* at ¶¶ 31-32.

Next, officers brought three eyewitnesses to the station. Two identified Turner as the shooter through photo arrays and live lineups. *See* Defs.' Resp. to Pl.'s Rule 56.1 Statement of Additional Material Facts 20-24, ECF No. 63. But none pointed to the plaintiff as someone who had been in the car. *Id.*; ECF No. 51 at ¶ 42.

---

[1] Carson was in the interview room for about three hours, but for much of that period Detective Tenton was not present.

3

The plaintiff and Turner were each charged with one count of murder and two counts of attempted murder.[2] ECF No. 51 at ¶ 53. Johnson was held in custody for roughly three years pending trial, which took place in August 2019. *See generally* Ex. L to Defs.' Rule 56.1 Statement of Material Facts, ECF No. 45-6. Turner and Johnson were jointly tried before separate juries. ECF No. 51 at ¶ 54. Turner was ultimately found guilty on all charges, but the plaintiff was acquitted. ECF No. 51 at ¶¶ 54, 56-57.

On June 15, 2021, the plaintiff sued Detective Denton under 42 U.S.C. § 1983, alleging wrongful arrest, detention, and prosecution in violation of the Fourth Amendment.[3] *Id.* at ¶¶ 6-7. The plaintiff asserts that law enforcement lacked probable cause to believe that he had driven his car during the shooting, rendering his pretrial detention an unconstitutional seizure. *See Manuel v. City of Joliet, Illinois*, 580 U.S. 357, 364 (2017). The plaintiff also submits that officers fabricated or suppressed evidence by coaching Carson's interview answers and subsequent testimony, offering Carson a deal to avoid incarceration, allowing Carson to avoid participating in a photo lineup, and masking the fact that Carson was not a credible witness. ECF No. 53 at 15, 17.

The defendants moved for summary judgment, contending that ample probable cause supported the decision to detain Johnson, no evidence was fabricated or suppressed, the issuance of a valid indictment foreclosed the plaintiff's claim, and, in any case, the defendants were entitled to qualified immunity.

---

[2] The record does not explain why there were two, rather than three, attempt murder charges.

[3] Johnson also named Detective T. Oliver in his complaint but has since conceded that Detective Oliver should be dismissed for lack of involvement in Johnson's arrest and prosecution. *See* Pl.'s Resp. in Opp. to Summ. J. 2, ECF No. 53. The Court agrees with both parties that the complaint fails to allege sufficient involvement on the part of Detective Oliver to sustain a § 1983 claim against him and grants summary judgment as to defendant Oliver accordingly.

**DISCUSSION**

Summary judgment is warranted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (quotation marks omitted).

1. **Probable-Cause Determination**

In seeking summary judgment, the defendants argue that no reasonable jury could find for the plaintiff because the record conclusively establishes that law-enforcement officers possessed at least arguable probable cause to arrest and detain Johnson until he was acquitted.

Probable cause is an "absolute defense" to a § 1983 claim against a police officer for wrongful arrest or detention. *See Manuel*, 580 U.S. at 364. "[P]robable cause for an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *United States v. Sands*, 815 F.3d 1057, 1061 (7th Cir. 2015) (quotation marks omitted). Establishing probable cause does not require proof of guilt, only "a probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). Courts assess probable cause by looking at the totality of the circumstances "as they would have appeared to a reasonable person in the position of the arresting officer." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998).

Law enforcement officers are entitled to qualified immunity for conduct that does not violate clearly established rights. *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022). For that reason, they generally cannot be held liable for unlawful arrest or detention so long as their case for probable cause was at least "arguable." *Id.* So long as "a reasonable officer in the same circumstances and possessing the same knowledge . . . could have reasonably believed that probable cause existed in light of well-established law," an arresting officer is immune from liability for wrongful arrest and detention under the Fourth Amendment. *Id.* (quotation marks omitted).

Whether probable cause exists is a mixed question of law and fact. *United States v. Ostrum*, 99 F.4th 999, 1004 (7th Cir. 2024). So long as the "underlying facts supporting the probable cause determination are not in dispute," the Court determines whether those facts were sufficient to establish probable cause as a matter of law. *Holloway v. City of Milwaukee*, 43 F.4th 760, 769 (7th Cir. 2022) (quotation marks omitted). If, on the other hand, "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the question of probable cause is one for the finder of fact. *Olson v. Cross*, 714 F. Supp. 3d 1034, 1060 (N.D. Ill. 2024) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)).

   a. **Probable Cause to Arrest**

The Court finds that Detective Tenton lacked arguable probable cause to arrest Johnson. Probable cause must be evaluated in light of "the facts known to the arresting officer at the time of the arrest," not evidence uncovered only after that point. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) ("[P]robable cause depends not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what

6

he saw, hearing what he heard."). The defendants' brief attempts to blur that distinction, providing a laundry list of facts known to Detective Tenton "[a]t the time of Plaintiff's arrest *and detention*." Defs.' Mem. in Supp. of Summ. J. 6, ECF No. 44 (emphasis added). Roughly half the items on that list, however, consists of facts obtained only after Johnson was placed in custody.

At the moment of arrest, no witness had identified Johnson as someone who had been involved in the shooting—as a driver, passenger, or assailant. Nor had any witness positively identified Johnson's car; officers knew only that the vehicle matched witnesses' rough description. *See* ECF No. 54-1 at 10 (police report clarifying that Detective Tenton did not show witnesses Johnson's car until after he and his associates had been taken into custody). By the same token, witnesses had yet to identify Shelby as the shooter and Detective Tenton had yet to review the surveillance footage. *Id.* Drawing every fair factual inference in the plaintiff's favor, *see Anderson*, 477 U.S. at 255, it is not even clear whether officers knew that the vehicle in question belonged or was registered to Johnson at that time.[4]

Looking no farther than the moment the plaintiff was arrested, the record establishes beyond genuine dispute that officers were aware of only two facts relating to Johnson: (1) a car matching eyewitnesses' description was found approximately one mile from the crime scene roughly one hour after the shooting and (2) plaintiff Johnson was driving the car when it was stopped. Those facts are insufficient to support more than a "bare suspicion" that Johnson had been driving at all relevant points in the afternoon. *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010).

---

[4] The defendants' statement of material facts asserts that the vehicle was owned by and registered to the plaintiff. ECF No. 51 at ¶ 18. But neither that statement nor the documents it cites reveals when or how officers discovered the car's registration or ownership. *See* ECF No. 45-2; ECF No. 45-3. Detective Tenton's police report also omits those details. ECF No. 54-1 at 11. By the same token, the record is ambiguous regarding when, precisely, officers first discovered the spent shell casing in Johnson's vehicle.

Turner and his associates had plenty of time to flee the crime scene, pick up Johnson, and travel to the location where the car was stopped, which is what the plaintiff maintains occurred.

Some information known to officers at the time of Johnson's arrest actually cut *against* the conclusion that he had been driving during the shooting. One eyewitness reported that the car contained only *three* people at the time in question. Later on, officers were directed to search for cars with at least *two* occupants. But at no point did any witness describe seeing four people inside the vehicle. *See* ECF No. 45-3 at 55. Detective Tenton acknowledged as much during his deposition, testifying that "[w]hat I got from the witnesses was they only saw two or three persons in the car."[5] *Id.* at 23 (Tr. 83-85). Given that information, any reasonable officer confronted with a vehicle with four occupants would have reason to pause and question whether one or more had entered the vehicle only after the incident reported by witnesses.

Focusing solely on "the facts and circumstances within [officers'] knowledge" at "the moment the arrest was made," the Court concludes that Detective Tenton lacked arguable probable cause to believe that the plaintiff had committed a crime at the time they effected the plaintiff's arrest. *See Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The fact that an officer later discovers additional evidence unknown to her at the time of the arrest . . . is irrelevant—we only care about what the officer knew at the time the decision was made.").

---

[5] The Court acknowledges that Detective Tenton's initial report stated that one witness observed "at least three people in the car." ECF No. 54-1 at 10. But a supplemental report, as well as Detective Tenton's own deposition testimony, states that witnesses reported three occupants at most. *See* ECF No. 45-3 at 23, 55. Given the procedural posture, the Court construes that factual discrepancy in the plaintiff's favor.

8

### b. Probable Cause to Detain

The Court further concludes that officers lacked arguable probable cause to detain the plaintiff (at least pre-indictment, as explained below). Inculpatory evidence concerning one group member cannot support the detention of a different member under the Fourth Amendment. A "seizure of a person must be supported by probable cause *particularized* with respect to that person"—a requirement that "cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another." *Maryland v. Pringle*, 540 U.S. 366, 373 (2003). While the defendants had probable cause to detain some of the plaintiff's associates—notably Turner, whom witnesses identified as the shooter—probable-cause determinations are not transferable by association. At no point before indictment did the defendants obtain sufficient evidence particularized to the plaintiff to arguably justify his detention.

Much of the evidence obtained after Johnson's arrest did not make his involvement in the shooting any more likely. The discovery of a spent shell casing, surveillance footage, and positive vehicle identification bolstered the inference that the perpetrator had used Johnson's vehicle. But those facts did nothing to undercut Johnson's claim that he had lent his car to Carson, who picked him up only after the shooting.[6]

---

[6] The defendants note that Johnson did not tell officers that he had not been driving at the time of his arrest or initial detention. His silence, coupled with the principle that "police officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established," establishes—according to the defendants—that no further investigation was required. *See Mustafa*, 442 F.3d 544, 548 (7th Cir. 2006). That argument fails for two reasons. First, the defendants rely on authorities that establish that officers have no duty to investigate extenuating circumstances after "probable cause has been established *via the accusation of a credible witness*." *Id.* (emphasis added). But no witness implicated Johnson, rendering that proposition inapplicable. Second, the defendants' argument begs the question. It is circular to assert that the defendants possessed probable cause because they had no further duty to investigate extenuating circumstances after obtaining probable cause.

Additional investigation did not fill the central hole in their case for probable cause—the fact that no eyewitness identified Johnson as an occupant of the car during the shooting. Law enforcement gave each eyewitness an opportunity to identify the plaintiff in a photo array. None did. Indeed, the witnesses acknowledged that "it was unlikely they would be able to pick out the driver." And one even selected a random test photo instead of Johnson's. *See* ECF No. 45-3 at 57-58; ECF No. 63 at 20-22.

Witness statements further weakened the case for probable cause. During an interview at the police station, one witness doubled down on the fact that he could not recall any more than two vehicle occupants. Ex. 6 to Pl.'s Rule 65.1 Statement of Additional Material Facts 13-14, ECF No. 54-6. The same witness also reported seeing a silhouette of a driver with long hair or dreadlocks—even though Johnson was clean cut. *Id.*

The defendants assert that Carson's interview with Detective Tenton at the police station conclusively established probable cause because she revealed that Johnson had been their driver during the shooting. It is unclear from the record, however, whether Carson actually made that admission to Detective Tenton. During Carson's deposition—which was taken more than five years after the events in question—she testified that she had indeed told Detective Tenton that Johnson had driven at the time of the shooting during her interview on June 27, 2016. *See* ECF No. 45-5 at 7, 14 (Dep. 19, 45); *see also id.* at 9-10 (Dep. 29-30). But that purported admission appears nowhere on the original transcript or video recording of Carson's interview. *See generally* ECF No. 54-2. And the video timestamps cited by Tenton to support his claim that Carson implicated Johnson do not implicate Johnson at all.

Because the content of Carson's June 27 interview is an unresolved factual question on which the evidence is inconclusive, the Court adopts the plaintiff's account as the party opposing

10

summary judgment. At this juncture, therefore, the Court assumes that Carson did not tell Detective Tenton that Johnson had been driving his car at the time of the shooting. That assumption rules out the only witness to purportedly incriminate the plaintiff, eroding the basis for detaining the plaintiff below the minimum probable-cause threshold.[7]

Urging the contrary conclusion, the defendants cite cases where courts found probable cause to arrest based on a witness' testimony implicating an arrestee. *See* ECF No. 44 at 5-6 (citing *People v. Rodriguez*, 627 N.E.2d 209 (Ill. App. Ct. 1993), *People v. Bobiek*, 648 N.E.2d 160 (Ill. App. Ct. 1995), *Cairel v. Alderden*, 821 F.3d 823 (7th Cir. 2016), *Fleming*, 674 F.3d 874 (7th Cir. 2012)). Perhaps predictably, the Court finds that case law inapplicable in light of the genuine factual dispute regarding whether even a single witness implicated Johnson. And the defendants' citation to *Switzer v. Village of Glasford* likewise fails to persuade. *See* No. 18-cv-1421, 2021 WL 4975730 (C.D. Ill. Oct. 26, 2021). *Switzer*'s fact pattern could hardly be more inapposite, as the arrestee in that case was visibly intoxicated, admitted to driving 10-15 minutes earlier, and acknowledged ownership of a truck that showed clear signs of a recent collision. *See id.* at *1-2.

While cognizant that "[p]robable cause is not a high bar," *Wesby*, 583 U.S. at 57 (quotation marks omitted), the Court nonetheless finds that the facts and circumstances known to officers during the plaintiff's initial detention were insufficient to support more than a "reasonable suspicion" that Johnson had facilitated the shooting. *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (noting that probable cause requires more than a reasonable suspicion of criminal activity). To be sure, the Seventh Circuit has acknowledged that an "identification by even one

---

[7] Given the evidentiary ambiguity and the plaintiff's consistent and firm objections to the defendants' characterization of Carson's interview—both in his response brief and in his response to the defendants' Rule 56.1 Statement—the defendants' continued insistence that it is an "undisputed fact[]" that Carson implicated Johnson on June 27 is, to put it mildly, surprising. *See*, *e.g.*, ECF No. 44 at 13.

eyewitness who lacks an apparent grudge against the accused person is sufficient to demonstrate probable cause." *Moorer v. City of Chicago*, 92 F.4th 715, 721 (7th Cir. 2024). In this case, however, a genuine factual dispute exists as to whether *any* witness provided incriminating testimony. Because the circumstantial evidence is thin at best—the simple fact that Johnson was found driving his own car within an hour of the incident says nothing about when he began driving—and because zero forensic evidence supports the government's case against Johnson, the Court concludes that the plaintiff's post-arrest detention was not supported by even arguable probable cause.

### 2. Chain of Causation

Probable cause aside, the defendant presses an alternative basis for summary judgment. Tenton contends that the issuance of an indictment against Johnson effectively broke the "chain of causation" between Johnson's detention and the actions taken by Detective Tenton, precluding Johnson's Fourth Amendment claim. *See* ECF No. 44 at 11-12.

As an initial matter, the defendants are unclear regarding the scope of their chain-of-causation argument. It makes intuitive sense that an argument rooted in an indictment would not preclude claims for wrongful arrest and initial detention that preceded the indictment's issuance. Yet the defendants nonetheless frame their contention as dispositive of the plaintiff's Fourth Amendment claim in its entirety, including as to the plaintiff's arrest and pre-indictment period of detention.

To the extent the defendants claim that Johnson's indictment foreclosed his ability to challenge even his initial arrest and detention, their claim fails, both as a matter of law and common sense. It is true that a lawful indictment is "prima facie evidence" that probable cause existed at the point it was returned—a point the Court will return to below. *See Lee v. Harris*, 127 F.4th 666,

12

672 (7th Cir. 2025). But the fact that probable cause supported the issuance of an indictment says nothing about when the government first acquired the minimum evidence necessary to establish probable cause—or, critically, whether the evidence existed before or after an initial arrest and detention. It is entirely possible for officers initially to detain an arrestee without probable cause in violation of the Fourth Amendment and only later acquire enough evidence to secure an indictment and justify pretrial detention. In such cases, the arrestee would be well within his rights to bring a § 1983 claim for wrongful arrest and initial detention, notwithstanding the validity of a later-procured indictment. *See Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1071 (N.D. Ill. 2022) ("There either is probable cause—or there is not—right at the time of the seizure. . . . How the false arrest plays a role in the later prosecution (if there even is one) does not matter."); *Julian v. Hanna*, 732 F.3d 842, 847 (7th Cir. 2013) (noting that even after an indictment, a defendant "would be able to recover for those torts only the damages he sustained during the week or so that he was detained before being formally charged"); *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004) ("[O]ne can have a successful wrongful arrest claim and still have a perfectly valid conviction." (quoting *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996))); *see also Lee*, 127 F.4th at 675 (noting that the converse is also true: "If an individual's initial detention is proper but probable cause dissipates before his release, a constitutional claim exists for any detention until he is either convicted or acquitted." (quotation marks omitted)).

In any case, the defendants' "chain of causation" argument rests on inapplicable and outdated case law. The defendants root their position in two Seventh Circuit decisions: *Reed v. City of Chicago*, 77 F.3d 1049 (7th Cir. 1996) and *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017). In both, the court of appeals concluded that a plaintiff could no longer bring a Fourteenth Amendment claim for malicious prosecution against law-enforcement officers after an

13

indictment was returned, reasoning that the prosecutor's independent charging decision broke the "chain of causation" that once linked the officers' conduct to the subsequent prosecution. *See Reed*, 77 F.3d at 1053; *Colbert*, 851 F.3d at 655. On their face, those holdings are inapplicable to the plaintiff, who does not claim malicious prosecution under the Fourteenth Amendment but arrest and detention without probable cause under the Fourth Amendment.

Notably, the plaintiff's Fourth Amendment theory was not available to the litigants in *Reed* or *Colbert*. When those cases were decided, the Seventh Circuit maintained that a plaintiff could not challenge his detention as unsupported by probable cause under the Fourth Amendment following the commencement of legal proceedings. *See Llovet v. City of Chicago*, 761 F.3d 759, 763 (7th Cir. 2014) ("[O]nce detention by reason of arrest turns into detention by reason of arraignment—once police action gives way to legal process—the Fourth Amendment falls out of the picture and the detainee's claim that the detention is improper becomes a claim of malicious prosecution violative of due process."). In 2017, however, the Supreme Court rejected that understanding, holding that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Manuel*, 580 U.S. at 366-67; *see also Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (recognizing that *Manuel* superseded the *Llovet* line of cases). Post-*Manuel*, the initiation of legal proceedings "does not expunge [a plaintiff's] Fourth Amendment claim." *Manuel*, 580 U.S. at 369 n.8. Regardless of whether an indictment has been returned, a plaintiff may, as Johnson has, contend that "the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime." *Id.*

The Court concludes that Johnson's indictment does not preclude him from challenging his arrest and initial period of detention preceding arraignment. More fundamentally, the Court finds

that the defendants' chain-of-causation argument, which is tied to pre-*Manuel* case law governing Fourteenth Amendment malicious-prosecution claims, is doctrinally inapplicable to Johnson's Fourth Amendment claim of unreasonable seizure post indictment.

### 3. Post-Indictment Presumption of Probable Cause

Although the Court rejects the defendants' chain-of-causation argument as inapplicable to the plaintiff's Fourth Amendment claim, it nonetheless finds that the evidence does not support the plaintiff's claim that the defendants lacked probable cause to detain him after obtaining an indictment.

As previewed above, a presumption of probable cause attaches once a grand jury indictment has been returned. *See Lee*, 127 F.4th at, 672 (7th Cir. 2025) (noting that "a grand jury 'indictment is prima facie evidence of probable cause'" (quoting *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019))). To rebut that presumption, "a plaintiff must advance 'evidence that law enforcement obtained the indictment through improper or fraudulent means,'" or show that the "defendants knew they lacked probable cause to arrest him." *Id.* (quoting *Coleman*, 925 F.3d at 351). A plaintiff can prove that an indictment was improperly obtained by demonstrating "(1) that the officer who sought the [indictment] knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and (2) that the false statements were necessary to the judicial officer's determination that probable cause existed." *Washington v. City of Chicago*, 98 F.4th 860, 870 (7th Cir. 2024) (cleaned up) (quotation marks omitted).

Even when construed in the plaintiff's favor to the maximum extent reasonable, the record forecloses any notion that officers made material misstatements or omissions "knowingly," "intentionally," or "with reckless disregard for the truth." *Id.* The plaintiff asserts that the defendants fabricated and suppressed evidence by introducing Carson's statements even though

15

she was not credible, coaching Carson's answers during her June 27 interview, falsely claiming that Carson had implicated the plaintiff, and omitting the fact that the defendants never subjected Carson to a lineup. *See* ECF No. 53 at 15. None of these actions, however, constitute knowing or reckless misrepresentation.

The record does not permit the conclusion that Detective Tenton orchestrated Carson's interview answers. The plaintiff draws attention to several tactics employed by Detective Tenton to get Carson to speak, such as hinting that she could serve as a witness rather than a defendant and warning that Carson might be found guilty if she did not volunteer information. Such methods do not constitute evidence fabrication, however. The Seventh Circuit has drawn a firm line between coercing a witness to testify and fabricating the content of their testimony. *See Whitlock v. Brueggemann*, 682 F.3d 567, 584 (7th Cir. 2012). A witness subjected to unduly coercive tactics might have a viable cause of action against their interrogator on a different legal theory (namely, voluntariness). But the mere fact that testimony was coerced does not establish its falsity for purposes of rebutting the presumption of validity attached to judicial determinations of probable cause. *Id.*

Nor did the defendant's omission of certain information—such as the fact that Carson was not asked to participate in a lineup—constitute evidence fabrication. Police are not required to conduct lineups or otherwise complete a standard checklist of investigative steps before a suspect can be indicted. Nor are officers under any fiduciary obligation to present all potentially relevant evidence to a grand jury, only information whose omission would constitute "reckless disregard for the truth." *See Washington*, 98 F.4th at 870. Not putting Carson—who had already admitted that she was in the car—in a lineup certainly does not meet that standard, and the plaintiff provides no basis to conclude that the defendants intentionally suppressed, rather than simply neglected to

16

include, information regarding their investigatory process. Nor can the plaintiff establish that such information would have been material to the charging decision. *See Garcia v. Posewitz*, 79 F.4th 874, 881 (7th Cir. 2023) ("If we imagine a complaint that includes all of the information that Garcia insists should have been included, a reasonable official might still determine that there was probable cause to arrest him.").

The fact that Carson was not a perfectly credible witness did not preclude defendants from presenting her testimony to the grand jury. To undercut the presumption of validity assigned to a judicial probable-cause determination, "it is not enough for a § 1983 plaintiff to show merely that a judge or juror could choose to disbelieve the witness." *Lee*, 127 F.4th at 674 (cleaned up) (quotation marks omitted).[8] Rather, a plaintiff must show that "officers entertained serious doubts as to the truth of their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause." *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1061 (7th Cir. 2018) (quoting *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003)). The mere fact that Carson initially withheld the truth during her interview does not qualify as an "obvious reason[] to doubt the accuracy of the information" she later provided. *Id.*

The plaintiff's last falsification argument—that the defendants misrepresented Carson's testimony as implicating Johnson—also fails. As stated above, the Court assumes in the absence of definitive evidence to the contrary that Carson did not identify Johnson as her driver during the shooting. To establish a knowing or reckless misrepresentation, however, the plaintiff must show

---

[8] The presumption of probable cause first arose the context of judicial determinations of probable cause made in the course of issuing an arrest warrant. *See Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010). The Seventh Circuit has definitively established, however, that a presumption of probable cause attaches to grand jury indictments as well. *See Coleman*, 925 F.3d at 351; *Washington*, 98 F.4th at 869.

that the defendants claimed otherwise before the grand jury. This they cannot do. The record contains no information regarding what evidence was presented, or what representations were made, to the grand jury. As such, the plaintiff's assertion that the defendants overstated Carson's interview rather than faithfully recount it, present the raw recording or transcript, or call Carson to re-testify live—rests on little more than speculation. And "'mere speculation or conjecture' will not defeat a summary judgment motion." *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (quoting "*Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 591 (7th Cir.1997)).

The Court concludes that the plaintiff's indictment established a rebuttable presumption of probable cause, a presumption that the plaintiff failed to overcome through a plausible theory of evidence falsification. Accordingly, the Court presumes that probable cause supported Johnson's detention from the point of indictment onward, despite the evidentiary deficiencies that plagued his initial arrest and detention.

* * *

In conclusion, the Court finds that Detective Tenton lacked arguable probable cause at the point when Johnson was arrested. The Court further concludes that the absence of probable cause continued during all initial periods of detention that preceded the plaintiff's indictment. The return of a lawful indictment, however, yielded a presumption of probable cause, a presumption that the plaintiff has not rebutted with a colorable theory of evidence suppression or falsification. Even after construing the evidence in the light most favorable to the plaintiff, the record forecloses any suggestion that the defendants intentionally or recklessly mislead the grand jury to indict.

For these reasons, the Court grants the defendants' motion for summary judgment in part, dismissing all claims against defendant Oliver and entering judgment in defendant Tenton's favor on the plaintiff's Fourth Amendment challenge to his detention for the post-indictment period

18

commencing on July 29, 2016. *See* ECF No. 45-6 at 32. But the Court denies summary judgment as to the plaintiff's claim of wrongful arrest and wrongful initial detention for a period—however brief—preceding July 29, 2016.

Dated: March 31, 2025

John J. Tharp, Jr.
United States District Judge

19